The last case for argument is Forbush vs. the City of Sparks. I'd like to reserve three minutes for rebuttal, please. Your Honors, we're here to answer two questions. The first question is whether this Court has jurisdiction over the City of Sparks appeal. The answer to that question is unquestionably, yes, it does. Under the Federal Arbitration Act, this Court has the jurisdiction to review denials of motions to compel arbitration. The City filed a motion to dismiss and, in the alternative, a motion to compel arbitration. The Court recognized that, and the District Court ruled both on the motion to dismiss and the motion to compel arbitration. We appealed the Court's decision to deny our motion to compel arbitration. That's why we're here, so the Court has jurisdiction. The second issue before the Court is more nuanced, and that's a question of whether or not the arbitration agreement contained in the collective bargaining agreement between the Sparks Police Protective Association and the City of Sparks contains a judicial forum waiver which warrants compelling Mr. Forbush's claims into arbitration. The City's position is absolutely that agreement contains a judicial forum waiver that allows for the arbitration of Mr. Forbush's claims. The City reaches that conclusion on the basis of simple contract construction. In this situation, Mitsubishi Motors v. Chrysler Daimler tells us that the intent of the parties should be controlling when it comes to reviewing arbitration agreements. It also tells us that the intent of the parties should be to create a presumption towards arbitrability. We're here because the parties agree that Mr. Forbush's claims are subject to the arbitration agreement contained in the CBA's grievance procedure, and we find that by looking at the grievance that Mr. Forbush and the Sparks Police Protective Association submitted to the City of Sparks back in December of 2020. When we look at that grievance, it is not just a grievance about Mr. Forbush's contractual claims. Mr. Forbush expressly includes claims alleging violations of both his First Amendment rights and Federal statutory law. He even tells the arbitrator, through the grievance procedure, that his claims for — which are separate from his just cause claims alleging the discipline issued against him lacked just cause, that the City's actions also violated not only his Federal constitutional rights, but his Federal statutory rights. And he says that the reason he believes he can arbitrate that is — If we find both interpretations to be plausible, you can see there's no clear and unmistakable waiver? No, Your Honor, I don't see that. So, the unmistakable waiver standard, as articulated by Justice Thomas in 14 Penn Plaza, shows us that the contract doesn't need to have magic language in it to create a sufficient judicial forum waiver. It doesn't need to say judicial forum waiver. It doesn't need to outline exactly what statutes are subject to a judicial forum waiver. That's all what the 4th Circuit in Darrington calls magic words. Instead, what Justice Thomas tells us we need is an explicit agreement to arbitrate statutory anti-discrimination claims. And that's what we have here, and that's frankly what Mr. Forbush and his union agreed the contract establishes. I mean, I guess I'm asking you, if we find they're both plausible, then you have to declare an unmistakable waiver. I know you disagree that you don't think Mr. Forbush's interpretation is plausible. I think in this instance, the contract, we have to look to the contract and the intent of the parties in articulating the meaning of the contract to determine whether or not Mr. Forbush, whether or not the parties agreed to arbitrate. And when we look at the intent of the parties, including reading the language of the contract in concert, it establishes a clear and unmistakable judicial forum waiver. I'm struggling to see how Darrington helps you. The decision in Darrington, it relates to language in a collective bargaining agreement that expressly covered any dispute alleging discrimination based upon membership in any protected categories under federal or state law. Here, the grievance procedure doesn't include any language that's even remotely similar to that covering statutory discrimination claims. It only covers contractual disputes. So I'm, I don't, I really don't understand how Darrington is, is helpful. Your Honor, Darrington in the line of cases it relies on, talk about the grant of arbitral authority. So when we look at the arbitration agreement in this contract, we have to look to see what the parties agreed the arbitrator would have authority to review and resolve. And what's important to remember is in Darrington, in each of these instances, you have a different set of contractual terms. You have a different statement of what is arbitrable. And in the city's grievance procedure, you have a very broad grant of arbitral authority. Similar to what's discussed in Ibarra and in Matthews, in those cases, the question became what, what is the arbitrator allowed to decide? Have the parties agreed that the arbitrator may decide certain issues? And in our, in our reading of our contract, when you look at the broad grant of authority to review not just claims under the contract and not just the interpretation of the contract, but disputes related to the interpretation and application of that contract, it allows the, the court to review not just the grievance procedure's arbitration grant, but also what the grievance procedure is intended to cover, which is all of the articles in the collective bargaining agreement. And if you look at- But you're asking us to ignore what the plain language of the agreement says and instead speculate about what the intent of the parties was in terms of the broad scope of issues to come under an arbitration? Your Honor, we're not asking, the city's not asking you to, to ignore the plain language of the statute. We're, we're, we're simply saying that the, the, the plain language of the contract, we're saying the contract to us reads that statutory claims are subject to the grievance procedure. And to, to reach that conclusion, we can rely on the, the own actions, the admissions of both the Sparks Police Protective Association, excuse me, that's a mouthful, and Mr. Forbush. Because if you look at the last page of his grievance, he specifically says that his, his Federal statutory rights and his, his claims under Federal statute, under Federal statute and Constitution, and even his, his claims alleging, you know, violations associated with the impact of the city's policies, which are not part of the contract, fall under that broad language in Section 1, Article 8. So just, I mean, just the, the fact that he combined his claims into, in the grievance form doesn't mean that he's agreeing that they're arbitrable. Your Honor, I, I, I disagree, respectfully. Yeah. I, what an arbitrator can resolve are only those claims that, that he has the right to resolve under the contract. Right. So in this situation, we have a contract with, which has a, a very broad grievance procedure and a very broad grant of arbitral authority. And the, the association and Mr. Forbush have agreed that that broad grant includes his Federal statutory claims. Wait, I'm sorry. So you read the contract to include, encompass, the CBA to encompass his statutory, Federal statutory claims? Yes, Your Honor, because they're related to, related to that anti-discrimination clause in Section 1, Article 8, or H, excuse me. Yeah. That doesn't seem strong enough to get you there. I mean, it's just a, you know, a general non-discrimination statement. It doesn't say it's encompassing Federal statutory rights. Your Honor, while the contract does not explicitly say, you, you have the, you know, this is the judicial form waiver for X, Y, Z statute, our position is it doesn't need to. Because in, when you read Justice Thomas' position, statement in, in Penn Plaza, he's saying that the standard is not that you have to have a clear and unmistakable judicial form waiver, that language within your claim. You have to show that the arbitrator's authority under the contract reaches that scope of claim. So what we're, our position is that under the language of the collective bargaining agreement, while it doesn't specifically say judicial form waiver of X, Y, Z, or judicial form waiver of those claims, it's the grievance procedure concerns those type, that, that type of contract, that scope of claims, and as a result, are arbitrable, and therefore should go to arbitration. I mean, I agree with you that it doesn't have to set out the specific statutes at issue, but it should be something stronger, like this includes Federal statutory rights. Like this, because like the non-discrimination policy you're referring to is just generalized. It doesn't refer at all to, it could refer to, you know, state rights or, you know, other things. It doesn't necessarily include Federal rights. Well, I, Your Honor, I respectfully disagree. When you look at Article H of the, when you look at Article H, Article H, subsection 1 says the city will not interfere with, discriminate in respect to any term condition of employment against an employee because of membership in the association, or because of any legitimate, legitimate activity pursuant to this contract by the individual employee. And then when you go down to Subsection 3, legitimate activity includes political, discrimination as to political affiliation or in accordance with any applicable Nevada or Federal law. So you're saying that, that statement or Federal law basically incorporates Federal law into the CBA? Yes, Your Honor. Additionally, what I point to in the grievance is that the grievance, Mr. Forbush and the association expressly on page 116 of the record, expressly interpret this provision as relating to those rights, those statutory rights under Federal law. So, we're here because we believe the interpretation of this contract while it allows for a broad grant of arbitral authority. And what's important here to remember is Mr. Forbush recognized it, too, and when he submitted his complaint, that complaint mirrors the claims presented in his grievance. He's not presenting new claims, new constitutional claims, new statutory claims. His claims are nearly identical, maybe the wording changed a little bit, but they're identical claims to what he presented to, in the grievance procedure for fighting arbitration. It doesn't matter if the grievance isn't settled. It may be submitted to arbitration, doesn't have to be submitted to arbitration. There's nothing that says that a grievance procedure usage is exclusive of a 1983 claim in court. There's nothing that precludes that if you decide to access some of the grievance procedures. Your Honor, I respectfully disagree. There's a long line of cases where if you look at Wright, if you look at 14 Penn Plaza, if you look at even Garner Denver. Let's look at Wright. Wright has a very similar collective bargaining agreement. In that case, the Fourth Circuit said it wasn't a clear and unmistakable waiver, right? Your Honor, Wright had a grievance procedure article that was similar, but as Wright notes at page 80, that grievance procedure, when looking at the rest of the contract, did not include an anti-discrimination clause, and the court found that very persuasive as to why the grant of arbitral authority didn't reach to those federal claims. So as to your question about the use of may, in almost all of these collective bargaining agreements, you are going to see a grant of may because of the fact that it's the employee's right to bring a grievance. Now, this is what the parties have agreed would be the method of resolving those grievances, those challenges of employer conduct that rule the employment relationship. But the may is up to the employee. The employee doesn't have the choice to choose a different process or procedure, but they don't necessarily have to take their grievance all the way through the arbitral process. Instead, the may allows them to resolve it, again, which is the purpose of these agreements, to resolve it at a lower level without incurring the time that it takes. I think 124 is enough, but I defer to the presiding judge.  I listened with attention to argument in the court's questions. Many of the issues and questions raised by the court are points that I would have made and intended to make, and I think the court, all of the questions, were quite astute. Can I maybe spend a minute addressing, I think, what counsel on the other side is arguing, which is that because of this language in Article H, it ties, even though the grievance procedure itself doesn't have language that is like Darrington, it doesn't matter because anything that is in these other articles of the CBA get sucked into the grievance procedure. What do you say to that? I appreciate the question, Your Honor. I imagine that this may be a hypothetical that the three of you have discussed with your clerks, and let me see if I can put it this way. If you could write, that's not what we have here, but let's assume you were a public employer and you wanted to cut off your employees' First Amendment rights and their ability to defend those rights in court without them knowing it, without them bargaining for it, without them realizing that you had done it, how would you do it? You'd write a CBA and you would say, the city won't discriminate against you or do anything bad. You'd use the most general possible language you could. And then, when somebody sued, you'd say, well, wait a minute. You're arguing a deprivation of your First Amendment rights. Maybe it's your second. Maybe it's your third. Maybe we courted some soldiers in your houses. Well, you're missing a step in your, I think you're missing a step in your hypothetical, which is then you would have a grievance resolution provision that would say anything relating to this agreement is subject to arbitration. Yes, Your Honor, and the reason I left that one out is because this CBA does not have any kind of a waiver provision anywhere. It does not say you are giving up your right to sue. It simply does not say that, as I think Your Honor pointed out. The waiver- But what requires that express waiver language? Well, all of the cases that have ever considered this issue, Your Honor, all of them from the Ninth Circuit and all of them from the Supreme Court, every one of those has had waiver language in it. The only part of the clear and unmistakable test that does not have to be literally verbatim is the specification of the particular statute by name. And I'm not even sure that would apply in this context, but that's what we seem to get from the Las Vegas case in this court and also from the Supreme Court from McDonald. This- But you agree that right doesn't require every single statute being spelled out, right? That's what- Yes, Your Honor, and I don't think it has to be, but there has to be something saying you, the employees in the union, are waiving, are giving up, are relinquishing your right to sue on the following issues. And if we look at the cases that were cited from other circuits, and particularly, you know, the Fourth Circuit and the Third Circuit case, if we wanted to- Are you asking us to explicitly require that all the statutes be spelled out? No, Your Honor, that's not the law, and I don't think that's in dispute. What does have to be put into a CBA if it is going to be read as affecting a waiver clearly and unmistakably is the words, you waive, you give up your right to sue on the following issues. And now, if I- Why would that be necessary if the CBA says, you know, this agreement encompasses your federal statutory rights, and then any disputes and or about the application or interpretation of the CBA are subject to arbitration. I think that's pretty clear, and I don't think we need that magic language of you waive federal rights. No, Your Honor, it's not magic language. You can pick the words. And I think that the Court is articulating the same hypothetical that we were just talking about. Right. If you were to write a CBA that said anything having to do with any federal right is subject to mandatory arbitration, and I do think it has to say mandatory, I appreciate the Court's comment, that you have a CBA here where it's just may. It's just permissive. By either party, though. Yeah. So if that's the other party. Right. But let's leave that to the side. Well, I mean, it's- Yeah. I want to focus on the core of the Court's question, which is, could you have a CBA that said that? Anything having to do with any federal right is arbitrable, is subject to arbitration. Would that meet the clear and unmistakable standard? And I suppose, you know, in some hypothetical universe, there would be a Court that said it would. But here's the thing. No public employee union in the country, no union, would ever agree to such language. This union didn't. So that's the reason why. So my question is, why isn't Article H, subsection 3, that, that situation? So can you explain that? Sure. So let's look at Article H, subsection 3. And if you'll notice in my answering brief, I put a footnote in there saying, what does subsection, Article H, actually say? It does not say anything about, you have given up your right or you have subjected to arbitration your rights to sue based on federal rights. So paragraph 1 that the Court read, the city will not interfere with or discriminate in respect to any term or condition of employment against any- But the 3, subsection 3. That's right. Well, I think the argument that I was hearing from the city is that subsection 1 incorporates subsection 3. I think that's what the argument was. So subsection 3 says the provisions of the contract shall be applied equally to all employees in the negotiating unit without discrimination as to political affiliation or in accordance with any applicable Nevada or federal law. So the question was, is that, is that language, language that clearly and unmistakably says you have forever given up your right to sue to vindicate any federal right, even rights created in 1791 in the Constitution, you have forever given those up and those must be subject to arbitration? Yeah. I mean, it doesn't say that. That is the question. Well, it doesn't say that, Your Honor, and there is nothing, I think, that would- in accordance with federal law, it does suggest that, you know, questions about interpretation, including those about federal law, should be part of the grievance process. No, Your Honor. This is- well, this is, this is not a question about interpreting the CBA. And again, let's go back to our hypo. If you wrote a CBA that simply said the city will not do anything that anybody doesn't like and leave it at that, and all those questions have to be arbitrated, then later, when somebody sues for a violation of their First Amendment rights, under a line of cases going back 75 years that is never once mentioned in here, then you suddenly say, wait a minute, the CBA said you're going to arbitrate anytime you're not happy with the city. Now, we didn't have to specify. We didn't have to use magic words. That's what it says. And if you want to interpret it, you've got to go to the arbitrator. So I do think, I mean, that is a reductio ad absurdum, in my view, of this claim. We can write a CBA that does not mention federal lawsuits, does not mention these rights. Let's, let me push back on that hypothetical. What if it says, you know, we will not do anything bad to you, including those secured by federal law? And it says? Yeah. Any specification of what those are must be arbitrated, and it says arbitration is mandatory? Yeah. That seems like closer to this case. Well, if you, if you ever see a CBA that says something like that, I mean, I think we could. Well, we're talking about hypothetical. Yeah. That, that, that's right, Your Honor. And I think if a, if a city were to propose that, such language like that, no one would sign it. And that's why we do have to. But that's not the point of the hypothetical. The hypothetical is the question whether or not that would be subject to arbitration under your hypothetical. I think at that point, if that case arose, I think probably most reasonable judges and most attorneys, particularly those who have any experience in this area, would say, no, that's a bridge too far, because the court does have to determine whether there has been a clear and unmistakable waiver. And I, I take the, the, the focus of the court's hypo to be, if you're talking about giving the arbitrator the task of interpreting the CBA, right, and you simply hand all of that over to an arbitrator, you say, the court's not even going to get into that, how then does the court satisfy its obligation under the Supreme Court's jurisprudence here to find a clear and unmistakable waiver? I mean, at some point, this court, as the district court did below, has to look at the document and ask, is there a clear and unmistakable waiver of this claim, this lawsuit that you are now bringing? You have to do that. And I don't think you can say, well, it's probably in there somewhere, and we'll let the arbitrator decide that. I mean, from my point of view, I think you're, you win 100%, you know, if it didn't include, if the CBA doesn't include the words in accordance with any applicable Nevada or federal law. If it didn't have those words, I think you win hands down. The question is, it has those words, so why, with that, why should you still win? Because what are those words doing? Where are they? Maybe interpret it as incorporating federal rights. Is it incorporating federal rights substantively? And I think this goes back to Judge Bumate's question, which I think is a very good question. If what we have here is a document which everybody has to look at it and try and figure out some potential meaning that we can't really see, but we imagine it might have something to do with incorporating federal law, then it's definitely not clear and unmistakable. And I would say, if we were, if those words mean anything, they mean subparagraph 3 of a waiver of the right to sue in federal court to vindicate your First Amendment rights under Section 1983. I mean, think about how attenuated that reading would be. How many steps do we have to get? If the city wanted to achieve this result, if they wanted to bargain for it, and I take very seriously the idea of looking at the intent of the parties and what the parties bargained for. That's part of what I do for a living. So if parties bargain for something, they talk about it, they think about it, they make a rational decision about what they're giving up and what they're getting for it. And if that had happened here, you would see it. You would see somewhere in here a part of this agreement in which it said the union understands that it is giving up the right to sue on the following issues. And I agree with the Court. You don't have to spell out the statute in the subsection, but you could say the right to sue in federal court to vindicate personal federal constitutional rights, something like that. It doesn't say that. So what does this say? Article H, subsection 3 says, we're going to apply our contract equally to all people in the union without regard to political affiliation or in accordance with any applicable or Nevada or federal law. I reckon one of your clerks might have pointed out, I don't know what that or is doing there in the middle of that sentence, and I have trouble parsing it because it's there. I cannot figure out, and I submit neither would the Court on close examination, exactly what that subparagraph even means. It certainly, though, does not mean you clearly and unmistakably have given up your right to sue to vindicate violations of your First Amendment rights under Section 1983. I mean, the main language we should be looking at and what both sides agree is the arbitration provision is the purpose of the following procedure is to settle as quickly as possible disputes concerning the interpretations and application of this contract. That does not appear to be a clear and unmistakable waiver of the right to bring any statutory claims in court. I agree with the Court on that point, yes, and yes, I mean, I think that's right. And the only other comment I would make on that, I think I've already noted this, but when parties who have representation, who have a track record, have a history, when they get together in a room to negotiate a contract, people know how to do that. And the whole point, if I wanted to boil down the whole history of this line of cases about how to apply, you know, Section 301 to collective bargaining agreements with public employees is that the parties can say what they want and put it on paper. And if they do so clearly and unmistakably, we're going to enforce it, but not this baby switch stuff. Let me add another sentence that adds further ambiguity. The written grievance shall clearly specify the alleged contractual violation supporting facts and requested remedy. It doesn't say statutory violation. It doesn't say it says contractual. I mean, at a minimum, it's adding more ambiguity. I agree with that, Your Honor. And on that point, I do feel constrained to point out that, and I can just encourage the court and its staff to actually look at Officer Forbush's grievance. It's there in the record. I can give the court the pages. It's in excerpts record 111 to 114. It doesn't say First Amendment. It lists a series of contractual provisions from the CBA. I mean, that's just, it's just not true that the grievance, you know, was somehow incorporating in federal constitutional claims. But as I think two of Your Honors have pointed out, it doesn't matter. I have one minute left. I wanted to mention this because I did file a motion to dismiss the appeal. I believe this appeal was improperly brought. I don't think that the motion to dismiss, that is not subject to an interlocutory appeal.  It was a motion to dismiss with prejudice, which is a request for final judgment by the court. And I would note on page 24 of my brief, I quoted from a document that was filed by the city on the record in this case, actually quoting the city council meeting from Starks that gave these attorneys the authority to do anything. And what they were authorized to do, nobody mentioned arbitration. They were authorized and directed to appeal the denial of their motion to dismiss. That's what their client told them to do. That's what they did. And that's what this Court's case law, like Martin v. Yasuda, which I quoted, says you cannot do. You cannot have your cake and eat it, too, in that way. So that's an alternative method to resolve this case. But I agree with the comments from all three judges on the merits, and I think your analysis is quite astute and on point. Thank you, counsel. Thank you. Thank you, Your Honors. So as an initial matter, contrary to Mr. Forbush's position, his grievance expressly contemplates the arbitrator reviewing both contractual claims, the discipline that he's challenging, because this, in effect, is a disciplinary challenge. He's challenging the basis for the city's discipline. But it also specifically says, all violations of the collective bargaining agreement, comma, federal and Nevada law, the policies of the City of Sparks and the Sparks Police Department, as well as violations of civil service rules. Counsel, can you address the issue with, you know, you raised Article H, Section 3, Subsection 3. I mean, it does say in accordance with applicable Nevada or federal law, but it doesn't say in it incorporates, you know, applicable federal law. It's ambiguous. So to me, it does seem not clear and ambiguous that the purpose of this provision is to incorporate federal law. Your Honor, so in Wright, the Court established that in order to waive a federal statutory substantive right, you have to have an explicit agreement to waive the judicial forum. And that you would also need to have, that agreement would need to be clear and explicit. But in 14 Penn Plaza, Justice Thomas clarifies that standard and says that it just needs to be a clear agreement to arbitrate federal statutory claims. So get to the point. Where is it clear that that's the agreement? So it's clear in the, that that's the agreement to talk about federal, to arbitrate federal statutory claims, because that provision in the contract contemplates disputes related to federal statutory claims. It specifically contemplates disputes related to political activity, which is the base of Mr. Forbush's claims, that he was He would agree it would be clearer if it said, and it incorporates federal law, right? Your Honor, I agree that using those specific terms would make the contract clearer. But we're dealing with the contract we have now, and what we find between Wright and Penn Plaza is there is a whole host of different ways that these contracts are applied. This is a public sector contract, which is an evergreen living contract that goes on and on forever and is very difficult to amend, as Mr. Forbush's attorney recognized. Therefore, we're in a position where the intent of the parties is clear because they have admitted that these types of claims, outside of contractual, specific contractual term challenges, are part of the grievance process, that the authority of the arbitrator to hear those terms, because, again, with arbitration, it's all about what the arbitrator's authority is. And that goes back to Gardner Denver and the line of cases. Even McDonald talks about, what is the grant of authority for the arbitrator? To wrap up, please. Your Honor, it's our city's position that this is, while the agreement, that Mr. Forbush's grievance gives intent of the parties to the agreement, and therefore, because the parties intended for arbitration to be, the arbitration of these types of claims to be covered under the collective bargaining agreement, that there should be a presumption that that intent means that they are, in fact, arbitrable. Thank you, Your Honor. Thank you, counsel. This case is submitted, and we are adjourned for today.
judges: BUMATAY, KOH, DESAI